## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## FLORENCE DIVISION

Tobaccoville USA, Inc.,

       Plaintiff,

vs.

United States Department of the Treasury, Alcohol and Tobacco Tax and Trade Bureau; Mary G. Ryan, Administrator, in her Official Capacity; and Janet Yellen, Secretary of the Treasury, in her Official Capacity,

       Defendants.

Civil Action No. _____

**PETITION FOR REVIEW**
**- and –**
**COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**

## INTRODUCTION

Plaintiff, Tobaccoville USA, Inc. ("Tobaccoville"), opened for business some twenty-five years ago and became a local South Carolina success story as a result of the determination, hard work, and distribution efficiency developed from the ground up by its three owners and a team of dedicated employees. The business navigated a myriad of difficult challenges, ranging from serious economic downturns, stiff competition, changes in distribution patterns, and the COVID pandemic, to establish itself as a major business in Darlington County. The three owners and principals, Larry Phillips, John M. June, and John M. June, Jr., conceived, built, and nurtured this success story. Only to find that capricious, biased, and arbitrary government

actions, contrary to law and the exercise of reasonable discretion, now threaten to turn the story from a success to a tragedy.

Tobaccoville imports and distributes Seneca Cigarettes, which are manufactured by a Seneca tribal entity on reservation land in Canada. In order to import the cigarettes, Tobaccoville must have a federal import permit. Without such a federal permit, Tobaccoville goes out of business. It is this permit that is at issue in this case. At the very inception of its business, Tobaccoville applied for and obtained the necessary and proper permit. For nearly twenty-five years, it has maintained this permit. Now, the Federal government seeks to strip Tobaccoville of its permit.

In approximately 2009, the United States Department of the Treasury, Alcohol and Tobacco Tax and Trade Bureau ("TTB") launched a campaign aimed at stripping Tobaccoville of its tobacco importer permit. TTB engaged in unfair tactics to bring down Tobaccoville regardless of the facts. TTB pursued this effort through an intricate series of maneuvers involving changing regulations without required public comment, applying regulations retroactively, applying vague regulations in draconian and unprecedented ways, threatening Tobaccoville, attempting to hoodwink Tobaccoville into relinquishing its permit, then finally simply bulldozing a shockingly erroneous decision in the Administrative Law Court, that rests upon a complete failure to exercise reasonable discretion as required by

law.  The TTB sought to strip away Tobaccoville's permit regardless of the law and facts, and was prepared to exercise its powers against Tobaccoville in ways not exercised against other importers, and against a background of fundamental and inherent bias.  The manner in which this campaign proceeded is complex and intricate.  When laid out in the light of day, however, as Tobaccoville intends to do here, the unjust result sought by TTB and the damage to Tobaccoville become crystal clear.  The type of conduct that Tobaccoville intends to illuminate as the case proceeds—capricious, arbitrary, and biased regulatory action—should not be permitted to shut down a longstanding business that has been a respected member of the Darlington County business community and contributor to local civic life for nearly a quarter-century.  Tobaccoville is confident the TTB's improper campaign to shut down Tobaccoville will not succeed.

Tobaccoville brings this action pursuant to 5 U.S.C. § 701 *et seq.*, seeking review and reversal of the Final Agency Decision ("FAD") issued by Defendant, TTB on December 3, 2018.  The FAD denied Tobaccoville's application for a permit to import tobacco products ("Import Permit" or "Permit").[1]  Tobaccoville further seeks an order declaring that it meets the requirements for an Import Permit and TTB

---

[1]    Where capitalized, the terms "Importer Permit" or "Permit" refer to *Tobaccoville's* permit(s), whether past, present, or future (as distinguished from a permit to import tobacco generally).

should approve its application.  Finally, Tobaccoville seeks an Order requiring TTB to issue Tobaccoville a new Permit and enjoining TTB from taking any further adverse action against Tobaccoville's Import Permit on the grounds set forth in the FAD.[2]

## **THE RECORD AND EXHIBITS**

Filed in support of this Petition and Complaint are the following:[3]

1.    The Master Index of Relevant Evidence (**Ex. "A"**), a comprehensive index identifying materials that should be contained in the record submitted by TTB, as well as additional materials filed in support of this Petition and Complaint;

2.    Filings in the related case of *Tobaccoville USA, Inc. v. U.S. Dep't of Treasury*, C.A. No. 4:16-cv-00424-RBH; and

3.    Expunction Orders relating to John M. June, Jr., and Larry C. Phillips, entered by the North Carolina Superior Court in *State v. June*, File Nos. 10CRS839.

---

[2]    In the related case of *Tobaccoville USA, Inc. v. U.S. Dep't of Treasury*, C.A. No. 4:16-cv-00424-RBH, this Court effectively enjoined TTB from taking any adverse permit action until Tobaccoville had exhausted all appeal rights with respect to the matter.  This prohibition will remain in place through the exhaustion of all appeals; the present action seeks to extend these protections to any post-appeals period.

[3]    Tobaccoville is aware that it is TTB's responsibility to file with this Court the whole Administrative Record.  Thus, to the extent this Petition and Complaint cites specific Exhibits, Tobaccoville submits that such Exhibits can and should be considered by this Court, despite the fact that they are outside the Administrative Record—either because they bear on Tobaccoville's claims for Declaratory Judgment and Injunctive Relief, or because they ought to be considered along with, or as a part of, the Administrative Record according to established principles of law.

10CRS840, 10CRS791, & 10CRS838 and *State v. Phillips*, File Nos. 10CRS843, 10CRS844, 10CR841-910, & 10CR842-910.

## SUMMARY OF PROCEDURAL STATUS

This action arises against the background of a complicated regulatory and procedural history, stretching across roughly two decades.

Tobaccoville imports certain tobacco products from a manufacturer in Canada and distributes them in the United States. Pursuant to Federal law, Tobaccoville must have an Import Permit in order to lawfully import these products. TTB is the Federal agency that administers these permits.

When Tobaccoville began business in 2002, the relevant Federal regulations required that a permit be renewed every three years, which was typically accomplished through simple affirmations by the permit holder. Tobaccoville obtained its first Import Permit in 2003. In later years (and through a process that even the Administrative Law Judge found to be legally flawed) TTB revised the regulations to require a certain class of permit holders not merely to renew their permits periodically, but to reapply for a permit every five years. This "reapplication" standard is a higher bar than the previous "renewal" standard. TTB misused the renewal status standard to deny Tobaccoville an Import Permit. Tobaccoville cannot continue in business without a permit.

In January 2014, Tobaccoville duly reapplied, per the improperly-adopted new regulations. In June 2015, however, TTB issued a Notice of Contemplated Disapproval with respect to Tobaccoville's application. At that point, Tobaccoville requested a hearing before the Administrative Law Judge ("ALJ") in which to challenge TTB's proposed application denial. The issue was tried in a hearing before the ALJ on March 2–3, 2016 (the "Hearing"). On December 16, 2016, the ALJ issued his Recommended Decision, recommending denial of Tobaccoville's Import Permit. On June 8, 2017, TTB issued a formal Decision and Order denying Tobaccoville's application. Finally, on December 3, 2018, the TTB Administrator issued the FAD at issue, thus triggering the six-year time period for appeal provided under 28 U.S.C. § 2401.

## ABBREVIATED TIMELINE OF KEY EVENTS

Provided for ease of reference, the following is a chronological list of key events. Each is discussed in greater detail in the sections that follow.

- **12/22/1999** – TTB passes temporary regulations providing that, effective January 1, 2001, new permits would be valid for period of three years.

- **09/03/2002** – Tobaccoville USA, Inc. is formed.

- **12/21/2002** – TTB's 1999 temporary regulations expire.

- **02/19/2003** – Tobaccoville receives its first Importer Permit.

- **08/01/2005** – The allegedly "criminal transaction" underlying the North Carolina felony pleas of John M. June, Jr. ("Mr. June, Jr.") and Larry C. Phillips ("Mr. Phillips") (below) occurs.

- **01/17/2006** – TTB approves renewal of Tobaccoville's Import Permit.

- **02/04/2009** – Congress passes Public Law 111-3, amending 26 U.S.C. §§ 5712(3) and 5713(b)(1) to include the felony conviction criteria.

- **06/04/2009** – TTB's Trade Analysis and Enforcement Division (TAED) places a hold on Tobaccoville's Permit renewal.

- **01/26/2010** – Mr. June, Jr. and Mr. Phillips receive North Carolina felony indictments.

- **07/19/2011** – TTB investigator <u>acknowledges</u> in an email that Tobaccoville's Permit was issued in the "no regulation" period, and, therefore, subject to no valid expiration date or renewal requirement.

- **01/06/2011 –** Mr. June, Jr. and Mr. Phillips enter *Alford* pleas to North Carolina felony charges.

- **03/30/2012** – TTB issues Tobaccoville an Order to Show Cause why its Permit should not be revoked and initiates revocation proceeding against Tobaccoville's Permit.

- **08/26/2013** – TTB promulgates new temporary regulations, without public comment, amending 27 C.F.R. §§ 41.201 and 42.202 by (1) extending the duration of new permits from three years to five years and (2) adding a "reapplication" requirement for permits with an effective date prior to August 26, 2013.

- **01/23/2014** – Tobaccoville reapplies for an Import Permit, as required by the improperly adopted new regulations.

- **06/03/2014** – TTB voluntarily dismisses the revocation proceeding.

- **06/24/2015** – TTB issues Tobaccoville a Notice of Contemplated Disapproval regarding Tobaccoville's application.

- **07/06/2015** – Tobaccoville requests a hearing before the ALJ.

- **02/10/2016** – Tobaccoville files a Complaint in this Court seeking a declaratory judgment and injunctive relief.

- **03/02–03/2016** – The Hearing

- **12/15/2016** – The ALJ issues his Recommended Decision.

- **01/19/2017** – Judge R. Bryan Harwell dismisses Tobaccoville's Complaint, without prejudice.

- **06/08/2017** – TTB issues the Decision and Order, Tobaccoville appeals to the Administrator of TTB.

- **12/03/2018** – TTB issues the FAD.

- **12/15/2022** – Mr. June Jr.'s felony plea is expunged by the State of North Carolina.

- **05/23/2024** – Mr. Phillips's felony plea is expunged by the State of North Carolina.

## SUMMARY OF ISSUES IN DISPUTE

The core issues in dispute are as follows:

A.    The FAD denying Tobaccoville's 2014 Import Permit application rested upon two statutory grounds:  26 U.S.C. § 5712(3)(A) and 26 U.S.C. § 5712(3)(B).  Subsection (B) allows TTB to consider denying a permit if the applicant or one of its principals was convicted of a felony "relating to tobacco products." Subsection (A) gives TTB the right to consider denying a permit if it determines the applicant's "business experience" demonstrates it will be unable or unwilling to

8

comply with the tobacco laws.  The FAD invoked both grounds as the basis for denying Tobaccoville's Permit application.  Tobaccoville contends, however, that the FAD misapplied and misconstrued both statutory provisions in a manner that violated Tobaccoville's fundamental rights, was arbitrary, capricious, and an abuse of discretion, and, therefore, requires reversal.

B.    26 U.S.C. § 5712(3)(B) cannot provide a basis for denial because, as a matter of law, the felony convictions upon which the FAD relied did not and do not exist.  Further, and in the alternative, the statute is constitutionally defective, and was both misconstrued and misapplied in a manner that was arbitrary, capricious, and an abuse of discretion.

C.    26 U.S.C. § 5712(3)(A) cannot provide a basis for denial because the statute is Constitutionally defective and was both misconstrued and misapplied in a manner that was arbitrary, capricious, and an abuse of discretion.

D.    Above and beyond the two-fold error in TTB's misinterpretation and misapplication of § 5712, TTB's denial of Tobaccoville's Permit application violated several sections of the Administrative Procedure Act ("APA").  TTB denied Tobaccoville Due Process and Equal Protection guaranteed by the Fifth Amendment.  These violations included the following:  TTB's improper adoption of the "reapplication" regulations; the ALJ's flawed and retroactive application of the statutes and standards at issue; disparate and discriminatory application of the

"denial" standards with respect to Tobaccoville; denial of opportunities for Tobaccoville to fully present its case; wrongful exclusion of evidence at the Hearing; and denial of Tobaccoville's right to present its case to an impartial decision-maker. These violations require reversal of the FAD.

E.     Independent of its remedies under the APA, Tobaccoville is also entitled to a) declaratory relief affirming that it meets the requirements for an Import Permit and that its application for a new Permit should be approved, and b) injunctive relief requiring approval of Tobaccoville's new Permit application and barring further or additional adverse action against its Permit, by TTB, on the same bases as the FAD.

## PARTIES AND JURISDICTION

1.     Tobaccoville is a South Carolina corporation with its principal place of business in Hartsville, South Carolina.  Tobaccoville was organized on September 3, 2002 and has conducted business continuously since that date.  The principals of Tobaccoville are John M. June, John M. June, Jr., and Larry C. Phillips.

2.     Defendant TTB is a bureau within the Department of the Treasury of the United States of America responsible for, among other things, the permitting of tobacco importers.

3.     Defendant Mary G. Ryan is the Administrator of TTB, being sued in her official capacity.

4.      Defendant Janet Yellen is the Secretary of the Treasury, being sued in her official capacity.

5.      Tobaccoville brings this action challenging TTB's interpretation and application of 26 U.S.C. §§ 5712 and 5713, and implementing regulations found at 27 C.F.R. §§ 41.198, 41.201, 41.202, and 27 C.F.R. Part 71.

6.      Tobaccoville is entitled to judicial review under Chapter 7 of the APA because the FAD constitutes a final agency action, and Tobaccoville will be adversely affected and suffer legal wrong should the FAD be allowed to stand. 5 U.S.C. § 701.

7.      This case and controversy arises under the Constitution and laws of the United States, presenting a Federal question properly within the jurisdiction of this Court.  28 U.S.C. § 1331.

8.      Venue is appropriate in this judicial district, as a substantial part of the events giving rise to the claim occurred in this district and Tobaccoville resides in this district.  28 U.S.C. § 1391(e)(1).

9.      This Court also has jurisdiction over Tobaccoville's Declaratory Judgment claim pursuant to 28 U.S.C. §§ 2201–2202 and Rule 57 of the Federal Rules of Civil Procedure.   Jurisdiction is similarly proper with respect to Tobaccoville's claims for Injunctive Relief. Rule 65, Fed. R. Civ. P.

10.      The APA permits declaratory judgments. 5 U.S.C. § 703.

11.    This case and controversy does not involve the payment of taxes and, therefore, is not subject to the Anti-Injunction Act.  Tobaccoville seeks to have its already-existing Permit to act as a tobacco importer maintained in place (per prior Court Order and Agreement) until it is granted a new Permit, which will actually enable it to pay additional Federal excise taxes going forward.  Tobaccoville does not, in this action, challenge the administration, levying, or payment of taxes related to its importation of tobacco products.

12.    This action is timely under 28 U.S.C. § 2401.

## FACTS

13.    The allegations of Paragraphs 1 through 12 above are realleged and incorporated by reference.

14.    After applying for an Import Permit and going through the rigorous administrative process to obtain one, Tobaccoville obtained its first Permit in 2003.

15.    Tobaccoville applied for a Permit renewal three years later, which TTB approved on January 17, 2006.  At the time this Permit was issued, there was no requirement for importers to reapply for permits.

16.    On February 4, 2009, Congress amended portions of the statutes relating to tobacco import permits, through Public Law 111-3.

17.    The amendments to the statutes added a new element for TTB to consider in deciding whether to deny or revoke a permit: conviction of a "felony

12

violation of . . . Federal or State criminal law relating to tobacco products." 26 U.S.C. §§ 5712(3)(B) and 5713(b)(1). No statute or regulation defines "criminal law relating to tobacco products."

18.    At all relevant times, Mr. June, Jr. and Mr. Phillips were shareholders and officers of Tobaccoville.

## THE FELONY PLEAS AND EXPUNCTIONS

19.    On January 26, 2010, the State of North Carolina indicted Mr. June, Jr. and Mr. Phillips, under N.C. Gen. Stat § 14-100, for conspiracy, obtaining property under false pretenses, and attempt to evade or defeat taxes in connection with certain transactions and related North Carolina excise taxes totaling $2.4 million.

20.    Tobaccoville was not indicted.

21.    The indictments stated that the alleged illegal conduct took place between August 1, 2005 and May 1, 2007.

22.    Mr. June, Jr. and Mr. Phillips, as well as Tobaccoville, denied the charges, asserting that the challenged transactions were legal, and had been carried out pursuant to advice from counsel as a legitimate means to reduce Tobaccoville's tax liability.

23.    Faced with no other reasonable option, Mr. June, Jr. and Mr. Phillips ultimately each pleaded guilty via *Alford* pleas to two felony counts of obtaining property by false pretenses (N.C. Gen. Stat. § 14-100), which were lesser included

offenses to the charges outlined in the indictments. All other charges in the indictments were dismissed.

24. The Plea Agreements specified that the conduct actually occurred in August 2005.

25. Mr. June, Jr. and Mr. Phillips received unsupervised probation as a sentence. They also agreed to pay $3 million in fines to the Wake County Clerk of Court, to pay $2.5 million in taxes and interest to the North Carolina Department of Revenue, and to cause Tobaccoville to pay $1 million to a designated escrow account as a non-participating manufacturer under the Master Settlement Agreement (MSA). All sums were paid in full prior to the entry of the guilty pleas.

26. The MSA is an agreement originally between the major tobacco companies and the Attorneys General of forty-six states which settled lawsuits initiated to recover tobacco-related healthcare costs.

27. All of the events underlying the indictments and the pleas occurred *prior to* the enactment of Public Law 111-3 (February 4, 2009), which added the new "felony" criteria for denying an import permit.

28. On October 4, 2022, two Orders were entered expunging all charges in the indictments against Mr. June, Jr. and Mr. Phillips, other than those to which they pleaded guilty. (**Ex. "B"**, Petition & Order of Expunction, *State v. June*, File Nos. 10CRS839 & 10CRS840 (N.C. Super. Oct. 4, 2022); **Ex. "C"**, Petition & Order of

Expunction, *State v. Phillips*, File Nos. 10CRS843 & 10CRS844 (N.C. Super. Oct. 4, 2022)).

29.    On December 16, 2022, an Order was entered expunging Mr. June, Jr.'s plea in this matter.  (**Ex. "D"**, Petition & Order of Expunction, *State v. June*, File Nos. 10CRS791 & 10 CRS 838 (N.C. Super. Dec. 16, 2022)).  On May 23, 2024, an Order was entered expunging Mr. Phillips's plea.  (**Ex. "E"**, Petition & Order of Expunction, *State v. Phillips*, File Nos. 10CR841-910 & 10CR842-910 (N.C. Super. May 23, 2024)).  As a result, and based upon the applicable law, the pleas never existed, must be ignored for purposes of this action, and have no effect upon Tobaccoville's entitlement to a Permit.

## THE FETRA CLAIM

30.    In February 2011, the United States of America filed a complaint against Tobaccoville in the U.S. District Court for the District of South Carolina, alleging that Tobaccoville had failed to pay its quarterly assessments imposed under the Fair and Equitable Tobacco Reform Act of 2004 ("FETRA").

31.    FETRA was enacted to facilitate the transition of the domestic tobacco market from a subsidized and regulated market into a free market system and required tobacco importers, like Tobaccoville, to make certain payments to the United States Department of Agriculture ("USDA").

32.    Tobaccoville miscalculated the date when the FETRA took effect.

33.    Unknowingly, Tobaccoville began paying one calendar quarter late, which was the source of the unplanned and unintended "shortfall."

34.    Tobaccoville did not act carelessly: it possessed legitimate grounds supporting its view of when payments began.

35.    After litigating the disagreement, the United States and Tobaccoville entered into a consent decree in September 2011, whereby Tobaccoville would make payments as agreed by the parties for the back payments (in addition to its regular monthly FETRA payments) to bring Tobaccoville current on all amounts due.

36.    The FETRA program ended in 2014, at which point the United States and Tobaccoville agreed to modify the consent decree.

37.    Tobaccoville thereafter made all payments as agreed, including interest, and the United States filed a Notice of Satisfaction on January 13, 2016.

38.    When the FETRA program concluded at the end of 2014, Tobaccoville received a notice of the final payments due under the program. Tobaccoville's then-Controller, James Green, contacted USDA and arranged a payment schedule for these final program payments. No action against Tobaccoville was necessary to obtain these amounts owed—Tobaccoville initiated contact with USDA to make the arrangements for payment and made all payments as promised.

## TTB'S REVOCATION ACTION AGAINST TOBACCOVILLE

39.    In 2012, based upon the North Carolina indictments and *Alford* pleas of Mr. June, Jr. and Mr. Phillips (*see* Paragraphs 19–29), TTB issued Tobaccoville an Order to Show Cause why its Permit should not be revoked, and initiated a <u>revocation</u> proceeding against Tobaccoville's Permit.

40.    In May 2014, TTB moved to dismiss this revocation proceeding, stating that Tobaccoville could continue operating under its existing Permit until TTB acted upon Tobaccoville's application for a new Permit (which Tobaccoville had submitted in January 2014, as required by the new temporary regulations discussed below).

41.    In June 2014, TTB dismissed the revocation proceeding.

## TTB'S NEW 'TEMPORARY' REGULATIONS

42.    On August 26, 2013, while the revocation proceeding was still pending (*see* Paragraph 39), TTB promulgated new temporary regulations, <u>without public comment.</u>  TTB excused its error by claiming that no affected party would be disadvantaged.

43.    The ALJ concluded that TTB <u>violated</u> the APA in passing the 2013 regulations because TTB failed to allow prior notice and comment and failed to provide a sufficient justification for not doing so.  The ALJ held TTB's violation of the APA was harmless—a clear legal error based on the evidence showing harm.

44.    One of these new temporary regulations extended the duration of an import permit from three years to five years.  Previous TTB regulations, dating from 2000, had required renewal every three years, with renewal being a ministerial act: A tobacco importer merely affirmed that it continued in business and still met the responsibility requirements of the statutes and regulations—permit renewal required no reapplication process or investigation.

45.    Upon information and belief, TTB believes that the Import Permit issued to Tobaccoville in January 2006 fell within a "regulatory gap", and, thus, was essentially perpetual, subject to no valid expiration date or renewal requirement. TTB never required Tobaccoville to renew its Permit and, the one time that Tobaccoville sought to renew its Permit, TTB informed Tobaccoville that renewal was not necessary.

46.    Based on its understanding that Tobaccoville's Permit fell within the "regulatory gap" and was therefore not subject to a "renewal" requirement, TTB began a campaign to find alternative means (other than simply denying the renewal) to "get Tobaccoville to surrender."  Emails produced at the Hearing (*see* Applicant's Ex. 4) and excerpted below provide direct evidence of TTB's scheme in this regard:

### *Email from TTB Investigator – July 18, 2011:*

What I need to know is if Tobaccoville's permit is one that is renewable or if they were caught in the limbo where the permits became permanent?  I need to know this in order to determine how to proceed. My first avenue is trying to get Tobaccoville to surrender . . . .  If they

will not go for that I need to know whether we would next pursue denial of the renewal or if we need to go and initiate revocation actions.

### Email from TTB Investigator – July 19, 2011:

I talked with . . . NRC Counsel[] regarding Tobaccoville's permit status. The permit issued on 1/17/06 was in the "no regulation" period and therefore did not expire on 1/19/09. The expiration date on the permit is irrelevant because there were no regulations to affect the expiration. That also makes the renewal filed on 5/22/09 as being irrelevant.

That shows me that my options are this: First, I will try to get them to surrender the importer business. . . . Secondly, if they do not surrender their permit, then we will have to proceed with revocation.

47.    In addition to requiring renewal every five years, the new temporary regulations (*see* Paragraph 41) also required all existing permit holders with a permit effective date before August 26, 2013 (such as Tobaccoville) to reapply for a permit rather than merely pursue renewal.  27 C.F.R. § 41.202 (effective August 26, 2013).

48.    TTB publicly justified this temporary regulation as being favorable to the tobacco importer community, unnecessary for public comment, and necessary to avoid the administrative expense of regulating inactive permits.  78 Fed. Reg. 38566-02 (June 2013).  Yet the prior renewal process took care of eliminating inactive permits, and TTB offered no further justification for requiring reapplications.

49.    Those tobacco importers whose permits had an effective date of August 26, 2013 or later only needed to pursue one application, just as under prior law.  Thus, TTB treated the two classes of permit holders differently.

19

50.    Tobaccoville submitted an application for a new Permit in January 2014.

## TENNESSEE MISDEMEANOR VIOLATIONS

51.    In May 2014, the United States of America filed an information in the U.S. District Court for the Eastern District of Tennessee alleging that Mr. June, Jr., Mr. Phillips, and one other individual knowingly sold and transferred cigarettes, for profit and in interstate commerce, without the filing of certain reports required under 15 U.S.C. § 376, in violation of 15 U.S.C. § 376 and 18 U.S.C. § 2.

52.    The government alleged that by failing to file the reports, Mr. June, Jr. and Mr. Phillips enabled Tobaccoville to avoid remittance of MSA escrow payments due to the State of Tennessee.

53.    Mr. June, Jr. and Mr. Phillips each pleaded guilty to a single count of misdemeanor violation of 15 U.S.C. § 376.

54.    In July 2014, the U.S. District Court for the Eastern District of Tennessee accepted these pleas and entered judgments adjudicating Mr. June, Jr. and Mr. Phillips guilty of violating the statute, sentencing them to one year of probation, and ordering them to pay just over $2 million in restitution to the Tennessee MSA escrow account.

55.    This restitution was paid in full. No probation violations occurred.

56.    Mr. Phillips and Mr. June, Jr. have accepted responsibility for their pleas; expressed regret for the activity; attested that they would not repeat that conduct; and there is no evidence that they have conducted activity in the same manner since that time.

57.    In June 2015, TTB issued Tobaccoville a Notice of Contemplated Disapproval of Application for Permit.

## EXCISE TAX FOR LARGE CIGARS

58.    Until it received the Notice of Contemplated Disapproval in June 2015, Tobaccoville received no notice and knew nothing of the government claiming Tobaccoville underpaid Federal excise tax.   The Notice of Contemplated Disapproval itself contained no time period or details regarding a suspected underpayment for imported large cigars.

59.    In January 2016, Tobaccoville received a communication from the District Director of TTB, for the first time suggesting Tobaccoville had used an improper tax basis for calculating the excise taxes applicable to certain large cigar imports.  No specific amount of underpayment was included in the correspondence.

60.    Subsequently, Tobaccoville discovered that, in reports it submitted to TTB from July 2013 to August 2014, Tobaccoville erroneously reported importation and distribution of "small cigars" rather than "large cigars."

61.    For those 13 months, Tobaccoville's customs broker, UPS Supply Chain Solutions ("UPS"), prepared all customs documentation; inserted the applicable rates and values for calculation of excise taxes; calculated the amount of excise tax due; and submitted those forms to U.S. Customs under a power of attorney from Tobaccoville.

62.    UPS alone determined what information to include, and Tobaccoville relied on UPS to submit correct information—a completely normal and routine reliance on a customs broker.

63.    The error occurred when UPS apparently misinterpreted a section of the regulations regarding the sale price for calculating duty on large cigars.  UPS failed to notify Tobaccoville of a change in the applicable regulations.

64.    Following the Hearing, TTB misconstrued Tobaccoville's testimony regarding UPS as an attempt to insulate itself from liability.  But Tobaccoville does not, and never did, contend that its use of UPS as its customs broker acts as an insulation to liability.  Rather, Tobaccoville sought to show that it is a responsible permit holder using a recognized expert in the industry to assist its compliance efforts.

65.    Upon learning of the error, Tobaccoville offered to pay any amounts it owed.  At the time, Tobaccoville maintained a $6.5 million cash bond to cover any

underpayment, an amount which TTB conceded was enough to cover the amounts of underpayment alleged.

66.    TTB never conducted a formal audit of Tobaccoville's Federal excise tax payments on large cigars.    Likewise, no assessment was ever issued to Tobaccoville for any amount of excise tax owed.

67.    Moreover, Tobaccoville has not imported large cigars since 2015. Thus, even assuming underpayment occurred in the past, it is not a continuing or present concern, nor was it a concern at the time of the FAD.

68.    Tobaccoville's primary tobacco import is cigarettes, with cigars comprising only a small percentage of its business.  There have never been any issues with Tobaccoville's Federal excise tax payments on cigarettes or any tobacco product other than the large cigars at issue in this case.

## <u>TOBACCOVILLE'S PREVIOUS ACTION IN THIS COURT</u>

69.    In February 2016, Tobaccoville filed a complaint in this Court seeking injunctive relief and a declaratory judgment to prevent TTB from taking action against its Import Permit.  (**Ex. "F"**, Complaint, *Tobaccoville USA, Inc. v. U.S. Dep't of Treasury*, C.A. No. 4:16-cv-00424-RBH (D.S.C. Jan. 19, 2017), ECF No. 1). Tobaccoville thereafter filed a Motion for a Temporary Restraining Order, Preliminary Injunction, or Stay.  (**Ex. "G"**, Plaintiff Tobaccoville USA, Inc.'s Motion for a Temporary Restraining Order, Preliminary Injunction, or Stay,

*Tobaccoville USA, Inc. v. U.S. Dep't of Treasury*, C.A. No. 4:16-cv-00424-RBH (D.S.C. Jan. 19, 2017), ECF No. 8).

70.    In March 2016, Judge R. Bryan Harwell ("Judge Harwell") issued an order denying Tobaccoville's motion, indicating that Tobaccoville's challenges to TTB's decision could be raised in an appeal to this Court once TTB issued a final decision on the Permit.  (**Ex. "H"**, Order, *Tobaccoville USA, Inc. v. U.S. Dep't of Treasury*, C.A. No. 4:16-cv-00424-RBH (D.S.C. Jan. 19, 2017), ECF No. 25).

71.    In January 2017, Judge Harwell dismissed Tobaccoville's complaint "without prejudice to Tobaccoville's right to refile after exhausting administrative remedies." (**Ex. "I"**, Order, *Tobaccoville USA, Inc. v. U.S. Dep't of Treasury*, C.A. No. 4:16-cv-00424-RBH (D.S.C. Jan. 19, 2017), ECF No. 33).

72.    On June 8, 2017, TTB issued the Decision and Order denying Tobaccoville's application.

73.    On December 3, 2018, the Administrator of TTB issued the FAD, upholding TTB's Decision and Order and denying Tobaccoville's Permit application on the basis of (1) the felony convictions of Mr. June, Jr. and Mr. Phillips; and (2) the misdemeanor convictions of Mr. June, Jr. and Mr. Phillips, together with the few instances of accounting and reporting errors described in Paragraphs 30–38 and 58–68 above.  (*See also* Exs. B–E.)

## GENERAL ALLEGATIONS

74.    The allegations of Paragraphs 1 through 73 are realleged and incorporated by reference.

75.    Tobaccoville and its principals have invested millions of dollars in the business.

76.    Tobaccoville will cease to operate without an Import Permit, as its only business is the importation of cigarettes and their distribution within the United States.

77.    Tobaccoville generates substantial revenues each year, employs numerous people in Darlington County, pays significant taxes to Darlington County and also to the State of South Carolina and the U.S. Government.  It also makes substantial payments into the South Carolina MSA escrow account and routine charitable donations to various local groups.

78.    Denying Tobaccoville a Permit, or revoking its Permit, will have a fatal economic impact on Tobaccoville, destroy the value of the investments made in the business for more than twenty years, and does not promote any rational government policy.

## FIRST GROUND FOR REVERSAL
### Interpretation & Application of 26 U.S.C. § 5712(3)(B)

79.    The allegations of Paragraphs 1 through 78 are realleged and incorporated by reference.

80.    A reviewing court may hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A).

81.    Based upon the applicable law, neither Mr. June, Jr., nor Mr. Phillips ever pleaded guilty or were convicted of the North Carolina felonies which formed one of the grounds for denial in the FAD.  The expunctions which have been issued to both Mr. June, Jr., and Mr. Phillips eradicate the felony convictions from existence as if they never occurred, such as to render this ground for denial wholly without factual or legal support. (*See* Exs. B–E.)

82.    Furthermore, and in the alternative, Congress did not expressly make the amendments in Public Law 111-3 retroactive to conduct occurring before the date of the amendments (February 4, 2009).

83.    Nothing in the legislative history of Public Law 111-3 suggests that Congress intended to make the "felony violation" ground for possible denial or revocation of a permit applicable to alleged criminal conduct occurring before the date of the amendment.

84.    The FAD, at TTB's urging, applied this "felony violation" amendment retroactively.  This misapplication was arbitrary and capricious and violates the Due Process protections provided by the Fifth Amendment of the United States Constitution.

85.    Nothing in the legislative history suggests that Congress intended the "felony violation" ground for possible denial or revocation of a permit to extend to felony violations of State law that are not related to tobacco products.

86.    TTB's position, and the FAD's conclusion, that the felony convictions of Mr. June, Jr. and Mr. Phillips constitute felony violations of State criminal law relating to tobacco products within the meaning of 26 U.S.C. § 5712(3)(B) contradicts the plain language of the statute because the North Carolina law under which they were convicted does not relate to tobacco products.

87.    Under binding Supreme Court precedent, TTB is limited to reviewing only the elements of the statute underpinning the prior conviction, and may not review the underlying facts of the activity which led to the conviction.

88.    The elements of N.C. Gen. Stat. § 14-100 have nothing to do with tobacco products.

89.    When considering the felony convictions, TTB abused its discretion by looking to facts outside the permissible scope of review.

90.    Additionally, TTB's position that a prior felony conviction automatically disqualifies a permit applicant contradicts its own regulations, its printed guidance to the public on its interpretation of those regulations, as well as the plain meaning of the statute.

91.    Even if the 2009 amendments can be applied retroactively, and even if the felony convictions can be construed as related to tobacco products (Tobaccoville denies both premises) TTB nonetheless has discretion in deciding whether to revoke or deny a permit on a case-by-case basis.

92.    TTB abused its discretion when it failed to properly analyze numerous material factors relating to the convictions, including the following:

a.    The business transactions which lead to the pleas were based upon the advice of counsel, not a scheme concocted by Mr. June, Jr., and Mr. Phillips.

b.    The transactions were both isolated in nature, and remote, dating back to 2006.

c.    The potential penalties associated with the charges in the indictment left Mr. June, Jr. and Mr. Phillips no practical option but to plead guilty, and, accordingly, they made their pleas under *North Carolina v. Alford* and never admitted guilt.

d.    Mr. June, Jr. and Mr. Phillips strictly complied with all aspects of the sentence, as did Tobaccoville.

e.    Tobaccoville instituted administrative and operational controls to ensure strict compliance with all applicable regulations going forward.

93.     Finally, as noted above, North Carolina has since issued expunction orders for the felony convictions of Mr. June, Jr. and Mr. Phillips.

94.     Under North Carolina law, an expunction order seeks to restore the recipient to the status they had before the proceedings occurred and requires the deletion of records about the case.

95.     Thus, this Court should decline to consider the felony convictions as a valid basis for the denial of Tobaccoville's Permit.

96.     For the reasons stated above, TTB's interpretation of 26 U.S.C. § 5712(3)(B), as well as its application of that statute to Tobaccoville, should be set aside as unlawful, as it is arbitrary, capricious, and constitutes an abuse of discretion in violation of the law.

## SECOND GROUND FOR REVERSAL
### Interpretation & Application of 26 U.S.C. § 5712(3)(A)

97.     The allegations of Paragraphs 1 through 96 are realleged and incorporated by reference.

98.     Nothing in the legislative history suggests that Congress intended for the "business experience" ground for denial or revocation to extend to all evidence that TTB may choose to view as relevant to an applicant's possible future conduct.

99.     Under 26 U.S.C. § 5712(3)(A), in determining whether an applicant is likely to maintain operations in compliance with the law, TTB may only consider an applicant's business experience, financial standing, trade connections, and previous

legal proceedings involving a <u>felony</u> violation of Federal criminal law relating to tobacco products.

100.   Thus, TTB's position, adopted in the FAD—that the business experience criterion for denying a permit application allows TTB to consider all evidence that, in TTB's sole discretion, bears on the applicant's probable future conduct—is contrary to the plain language of the statute.

101.   TTB's position, adopted in the FAD, that it may consider misdemeanor violations as part of an applicant's business experience impermissibly extends the business experience criterion beyond its intended scope, as Congress specifically limited the convictions that may be considered under § 5712(3)(A) to <u>felony</u> convictions.

102.   The following decisions made by TTB (and adopted in the FAD) in interpreting § 5712(3)(A) and applying the statute to Tobaccoville are arbitrary, capricious, and amount to abuse of discretion in violation of the law:

        a.     concluding that the misdemeanor convictions of Mr. June, Jr., and Mr. Phillips provide evidence that Tobaccoville is unlikely to maintain compliance with the law;

        b.     concluding that a literal handful of isolated and unintentional reporting and accounting errors, when measured against thousands of

accurate and uncontested filings, are sufficient to demonstrate that Tobaccoville is unlikely to maintain compliance with the law; and

c.        refusing to give due consideration to the steps taken by Tobaccoville to remedy each error, as well as Tobaccoville's prior and subsequent history of compliance.

103.   For the reasons stated above, TTB's interpretation of 26 U.S.C. § 5712(3)(A), as well as its application of that statute to Tobaccoville should be set aside as unlawful.

### THIRD GROUND FOR REVERSAL
**Violations of the Constitution and the APA**

104.   The allegations of Paragraphs 1 through 103 are realleged and incorporated by reference.

**Due Process**

105.   When a statutory amendment attaches new substantive legal consequences to completed conduct, retroactive application violates the due process guarantee of the Fifth Amendment.

106.   Upon information and belief, TTB changed its regulations to have importers in the position of Tobaccoville reapply for a permit (rather than merely renew) in order to effectively shift the burden of proof.

107.   Under the "renewal" framework, it was necessary for TTB to bring a revocation proceeding in order to strip a permit holder of its permit.  n such a

revocation proceeding, TTB bears the burden of proof to show that the tobacco importer cannot meet the requirements of responsibly operating its business. 27 C.F.R. § 71.81.

108.   Under the new permit reapplication framework, however, the <u>applicant</u> bears the burden of proof of demonstrating that it can responsibly meet the requirements of the act in operating its business. 71 C.F.R. § 71.80.

109.   By shifting the burden of proof to Tobaccoville, the amendment attached new substantive legal consequences to completed conduct.

110.   TTB seeks to carry out revocation via a regulatory change by shifting Tobaccoville's Permit status from a perpetual or automatic renewal status to a new application status.

111.   In this regard, TTB's conduct amounts to a taking of a perpetual permit that is only subject to revocation on statutory grounds—not a new approval process.

112.   Therefore, by requiring Tobaccoville to reapply, and taking the position that the felony conviction amendments should apply retroactively, TTB violates the Due Process and takings protections afforded to Tobaccoville by the Fifth Amendment.

113.   Upon information and belief, TTB engaged in selective enforcement in its actions towards Tobaccoville. But Tobaccoville was denied the opportunity to

develop this claim due to TTB's refusal to consider relevant evidence or allow for any sort of meaningful discovery process.

114. Tobaccoville was denied access to information about other permittees, applicants, and entities.

115. Tobaccoville was denied access to copies of TTB's internal guidelines for considering permit applications.

116. The ALJ refused to allow the testimony of regulatory expert, Leland Beck, who sought to give context and understanding to TTB's procedural violations of the APA.

117. The ALJ refused to allow Tobaccoville to admit evidence of similarly situated applicants as to whom TTB did not revoke or deny permits. This evidence came in the form of public disclosures made by TTB on its website and in newsletters.

118. The finding below denied a meaningful opportunity to develop the defense. Tobaccoville cannot develop its case when TTB refuses access to relevant, important evidence of selective enforcement and to otherwise make a complete record for review.

119. The statute protecting taxpayer filings does not allow TTB to foreclose discovery. Tobaccoville suggested redaction and other methods of identity protection.

120. TTB's failure to provide Tobaccoville the opportunity for a full and fair opportunity to present its case violates the Due Process Clause of the Fifth Amendment.

121. Tobaccoville was further denied Due Process when it was deprived of its right to present its case to an impartial decision-maker.

122. Then Director of the National Revenue Center, Thurla Skora ("Director Skora"), was the deciding official who signed the Decision and Order issued in June of 2017, denying Tobaccoville's application in accordance with the ALJ's recommendation.

123. Director Skora testified at the Hearing. he testified that she was involved in reviewing investigative reports, the exhibits, court documents, and TTB processing and procedural documents.

124. Director Skora also reviewed opinions of counsel and worked with counsel involved in the case.

125. Director Skora's involvement in this matter included, but was not limited to, the following: issuing the citation for the contemplated disapproval of Tobaccoville's application; testifying as a witness at the Hearing in support of the denial of Tobaccoville's application; reviewing the ALJ's Recommended Decision to deny Tobaccoville's application; subsequently contemplating the disapproval of Tobaccoville's application; considering Tobaccoville's proposed findings and

conclusions or exceptions to the ALJ's Recommended Decision; and then (ultimately) issuing an order denying Tobaccoville's application.

126.   This regulatory framework allowing the Director to serve as a decision-maker, witness, and reviewing body runs afoul of due process by denying Tobaccoville the right to an impartial decision-maker.

### Violations of the Administrative Procedure Act

127.   The APA requires that TTB provide notice of all proposed rules in the Federal Register and, after such notice, to give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments.  5 U.S.C. § 553.

128.   TTB violated the APA when it passed the 2013 amendment without notice and the opportunity to comment, and failed to provide a sufficient justification for not doing so.

129.   Despite the ALJ's conclusion to the contrary, TTB's violation of the APA materially changed the case and prejudiced Tobaccoville.  It impermissibly shifted the burden of proof to Tobaccoville and upset Tobaccoville's settled expectations as a member of the regulated community.

130.   The regulation should be deemed voidable and unenforceable as to Tobaccoville.

## Equal Protection

131.    Nothing in the legislative history suggests that Congress intended for current holders of an import permit to reapply and go through a second application process.

132.    Permit holders with an effective date after August 26, 2013 do not need to go through a second application process at any time.

133.    TTB's temporary regulation requiring existing permit holders to reapply and go through a second application process exceeds its authority under the statute as amended and denies Tobaccoville Equal Protection of the laws under the Fifth Amendment to the Constitution.

134.    Further, as was discussed in Paragraphs 113 through 118 above, Tobaccoville believes it was the target of selective enforcement by TTB because TTB took action against Tobaccoville when it had not done so against other regulated entities who were similarly situated.

135.    Along with other evidence, Tobaccoville's belief is based on the following chain of events:

        a.    During a 2011 investigation, TTB officials attempted to persuade Tobaccoville to give up its Permit, even though no conclusions of wrongdoing had been reached.

b.      Then, in 2012, TTB brought a revocation proceeding against Tobaccoville which resulted in extended administrative litigation over a period of two years.

c.      After all this litigation, TTB simply dismissed and abandoned its claims once the new 2013 regulations went into effect.

d.      Having failed in its earlier attempts to divest Tobaccoville of its Permit, TTB decided to wait for Tobaccoville to reapply for the Permit it already held in perpetuity, and then tried to use the same pre-effective date evidence to prevent issuance of a new Permit in a situation where Tobaccoville bore the burden of proof.

136.   Evidence like the emails referenced in Paragraph 46 further validates Tobaccoville's belief that TTB officials were uniquely intent on getting Tobaccoville to "surrender" to TTB.

137.   The ALJ and TTB improperly barred Tobaccoville from developing its equal protection claim by denying discovery. Tobaccoville maintains that discovery proceedings before this Court are likely to reveal additional evidence in support of its selective enforcement claim.

### <u>FOR A FIRST CAUSE OF ACTION</u>
**Declaratory Judgment**

138.   The allegations of Paragraphs 1 through 137 are realleged and incorporated by reference.

139.   Tobaccoville and TTB have a present, concrete, and material controversy regarding the meaning and application of the applicable tobacco importer statutes and regulations, and whether or not they are Constitutional.

140.   The statutes and regulations, as applied to Tobaccoville by TTB and the FAD, violate Tobaccoville's rights to Due Process and Equal Protection, and constitute an illegal taking of its property in violation of the Fifth Amendment to the United States Constitution.

141.   TTB enacted final amended 27 C.F.R. § 41.202 in violation of the APA without public notice or comment.

142.   This Court should enter its judgment declaring the following: TTB's interpretation and application of 26 U.S.C. § 5712 as it relates to Tobaccoville is unconstitutional; the permit reapplication process is unconstitutional; there is, and was, no felony conviction in this case; the retroactive application of the felony conviction statute and regulations is unconstitutional; TTB's failure to provide notice and comment in passing 27 C.F.R. § 41.202 violates the APA and is not harmless error; and Tobaccoville is entitled to retain its existing Permit and / or receive a new Permit.

143.   There is a significant public interest in the proper and Constitutional administration of import permits, such that the Court should exercise its discretion to hear and resolve the issues raised by Tobaccoville in this action.

## FOR A SECOND CAUSE OF ACTION
### Injunctive Relief – Permanent Injunction

144.  The allegations of Paragraphs 1 through 143 are realleged and incorporated by reference.

145.  A Federal district court may enter a permanent injunction where the party seeking the injunction succeeds on the merits of the case and demonstrates that (1) it will suffer irreparable harm if the court withholds the injunction; (2) the remedies available at law are inadequate; (3) the balance of hardships favors the party seeking the injunction; and (4) the public interest will not be disserved by granting the injunction.

146.  Denying Tobaccoville's application for an Import Permit or otherwise taking action against Tobaccoville's Import Permit on the basis of the FAD will put Tobaccoville out of business.

147.  Absent an injunction by this Court, TTB will be free to reinitiate proceedings against Tobaccoville's Permit and to deny Tobaccoville's future Permit applications on the same bases as the FAD.

148.  Monetary relief and reversal of the FAD are insufficient to protect Tobaccoville from irreparable harm should TTB revoke its Import Permit or deny its application for such Permit in the future based on the same facts and events underlying the FAD.

149.    The record demonstrates that TTB used the same facts to support taking Tobaccoville's Permit in two different proceedings.  TTB should be enjoined from trying to use those facts against Tobaccoville in any future proceedings.

150.    TTB will suffer no harm as a result of being barred from applying incorrect interpretations of the relevant tobacco laws, whereas Tobaccoville will be destroyed if this is allowed to occur.  All parties benefit, therefore, from proper interpretation and application of the relevant tobacco laws.

151.    The injunction requested does not impinge upon TTB's regulating authority over issues arising in the future.

152.    In addition, public policy favors the proper construction and application of the relevant laws.

153.    The public interest, especially the interest of the community where Tobaccoville operates, will not be disserved by an injunction from this Court, as Tobaccoville is well-regarded as a major contributor to the local economy, and the termination of Tobaccoville's business will cause considerable hardship to its numerous employees, their families, and the broader community.

154.    This Court should enter its judgment enjoining TTB from taking any further adverse action against Tobaccoville's Permit in any way based upon or arising from the facts underlying the FAD.

WHEREFORE, having complained of the Defendant TTB herein, Plaintiff Tobaccoville prays as follows:

A.    The Court issue a Scheduling Order that will provide for timely and thorough discovery, mediation, and a full evidentiary hearing on the issues herein;

B.    The Court grant judicial review of the FAD pursuant to 5 U.S.C. § 701 *et seq.*, and reverse the conclusions of the FAD;

C.    The Court issue its Declaration that Tobaccoville is entitled to have its application for a new Import Permit approved, and to receive an Import Permit;

D.    The Court issues its Injunction requiring TTB to approve Tobaccoville's Permit application, and enjoining TTB from taking any further adverse action against Tobaccoville's Permit on the grounds set forth in the FAD; and

E.    The Court award Tobaccoville such costs, attorney's fees, and other relief as may be just and proper and provided by law.

*(Signature on Following Page)*

By: /s/ Marcus Angelo Manos
Val H. Stieglitz, Fed ID No. 4318
Marcus Angelo Manos, Fed ID No. 4828
Amy Harmon Geddes, Fed ID No. 8065
MAYNARD NEXSEN PC
1230 Main Street, Suite 700
Columbia, SC 29201
Telephone: 803.771.8900
Facsimile:  803.253.8277
Email: vstieglitz@maynardnexsen.com
       mmanos@maynardnexsen.com
       ageddes@maynardnexsen.com

Columbia, South Carolina
November 18, 2024

*Attorneys For Plaintiff Tobaccoville USA, Inc.*